## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| MTE HOLDINGS LLC, *et al.*,[1] | Case No. 19-12269 (CTG) |
| Reorganized Debtors. | Jointly Administered |
| RPA ASSET MANAGEMENT SERVICES, LLC, TRUSTEE OF THE MDC LITIGATION TRUST, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 21-51255 (CTG) |
| MARK SIFFIN, MDC ACQUISITION LLC, MAEFIELD DEVELOPMENT CORPORATION, and MDCE INVESTMENTS LLC, | |
| Defendants. | |

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

[1]     The Reorganized Debtors in these Chapter 11 Cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: MTE Holdings, LLC ("MTE Holdings") (7894); MTE Partners, LLC ("MTE Partners") (1158); Olam Energy Resources I LLC ("Olam") (0770); MDC Energy LLC (9140); MDC Texas Operator LLC (1087); Ward I, LLC (6817); and MDC Reeves Energy LLC (3644). The Debtors' address is 280 East 96th Street, Suite 210, Indianapolis, Indiana 46240. On October 22, 2019, MTE Holdings filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. On October 23, 2019, MTE Partners and Olam filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. And on November 8, 2019, the remaining Reorganized Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. The bankruptcy cases were jointly administered under Case No. 19-12269.

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................... ii

REPLY ........................................................................................................................ 1

    I.       The Actual Fraudulent Transfer Claim Fails. ........................................ 1

    II.     The Constructive Fraudulent Transfer Claim Fails. ............................... 5

    III.   The Preference Claim Fails....................................................................... 6

    IV.   The Claims Under TUFTA Fail. ............................................................... 7

    V.     MDC Acquisition Was a Mere Conduit—Not an Initial Transferee. ..................... 8

    VI.   The Transfer from Non-Debtor BML Cannot Be Avoided. ................................. 9

    VII.  The Alter Ego Claim Fails. ..................................................................... 10

    VIII. The Breach of Fiduciary Duty Claim Fails............................................ 10

    IX.   The Unjust Enrichment Claim Fails. ...................................................... 12

    X.     The Conspiracy and Aiding and Abetting Fraudulent Transfers and Breach of Fiduciary Duty Claims Fail. ............................................................... 13

    XI.   The Waste Claim Fails............................................................................ 15

CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
   910 A.2d 1020 (Del. Ch. 2006)................................................................................14

*Anderson v. Airco, Inc.*,
   Case No. 02C-12-091, 2004 WL 2827887 (Del. Super. Ct. Nov. 30, 2004)....................14, 15

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
   838 F.2d 890 (7th Cir. 1988) ...........................................................................9

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ................................................................................15

*Burtch v. Seaport Cap., LLC (In re Direct Response Media, Inc.)*,
   466 B.R. 626 (Bankr. D. Del. 2012) .....................................................................2

*Cardiello v. Arbogast*,
   533 F. App'x 150 (3d Cir. 2013) ........................................................................3

*Carr v. Britton*,
   Case No. 14-1931, 2015 U.S. Dist. LEXIS 35687 (M.D. Pa. March 23, 2015)......................5

*Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*,
   170 F. App'x 805 (3d Cir. 2006) ........................................................................4

*Dobin v. Presidential Fin. Corp. (In re Cybridge Corp.)*,
   304 B.R. 681 (Bankr. D.N.J. 2004) ......................................................................10

*ECB USA, Inc. v. Savencia, S.A.*,
   Case No. 19-731, 2021 WL 3187495 (D. Del. July 28, 2021) ....................................4

*Gavin Solmonese, LLC v. Shyamsundar (In re AmCad Holdings, LLC)*,
   579 B.R. 33 (Bankr. D. Del. 2017) ......................................................................2

*Gilman v. Walters*,
   61 F. Supp. 3d 794 (S.D. Ind. 2014)....................................................................10

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   817 A.2d 160 (Del. 2002) ................................................................................13

*Hammond v. City of Phil.*,
   Case No. 00-5082, 2001 WL 823637 (E.D. Pa. June 29, 2001) ..................................3

*Helicopter Helmet, LLC v. Gentex Corp.*,
   Case No. 17-00497, 2018 WL 2023489 (D. Del. May 1, 2018)....................................12

ii

*In re Am. Business Fin. Servs., Inc.*,
    457 B.R. 314 (Bankr. D. Del. 2011) ...................................................................... 14

*In re F-Squared Inv. Mgmt., LLC*,
    Case No. 17-50716, 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ................................... 3

*In re Green Field Energy Servs., Inc.*,
    Case No. 13-12783, 2015 WL 5146161 (Bankr. D. Del. Aug. 31, 2015) ........................... 12-13

*In re Gruppo Antico, Inc.*,
    359 B.R. 578 (Bankr. D. Del. 2007) ....................................................................... 9

*In re HealthSouth Corp. S'holders Litig.*,
    845 A.2d 1096 (Del. Ch. 2003) ............................................................................ 11

*In re MeadWestvaco Stockholders Litig.*,
    168 A.3d 675 (Del. Ch. 2017) .............................................................................. 14

*In re Mervyn's Holdings, LLC*,
    426 B.R. 96 (Bankr. D. Del. 2010) ......................................................................... 9

*In re NovaPro Holdings, LLC*,
    Case No. 14-10895, 2018 WL 2102323 (Bankr. D. Del. May 4, 2018), *aff'd*, 815 F. App'x 655
    (3d Cir. 2020) ................................................................................................. 2

*In re The Brown Schs.*,
    386 B.R. 37 (Bankr. D. Del. 2008) ........................................................................ 11

*In re Walt Disney Co. Deriv. Litig.*,
    906 A.2d 27 (Del. 2006) .................................................................................... 15

*Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*,
    Case No. 21-50359, 2021 WL 5016127 (Bankr. D. Del. Oct. 28, 2021) .................................. 5

*Koehler v. Litehouse, Inc.*,
    Case No. 12-04055, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ........................................ 6

*Kovach v. Turner Dairy Farms, Inc.*,
    929 F. Supp. 2d 477 (W.D. Pa. 2013) ..................................................................... 7

*Lee v. Pincus*,
    Case No. 8458, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014) .............................................. 14

*Lewis v. Vogelstein*,
    699 A.2d 327 (Del. Ch. 1997) .............................................................................. 15

*Lipson v. Anesthesia Servs., P.A.*,
    790 A.2d 1261 (Del. Super. Ct. 2001) ................................................ 15

*Logical Design Sols., Inc. v. CVS Pharmacy, Inc.*,
    Case No. 20-12077, 2021 WL 926614 (D.N.J. March 11, 2021) ................................ 1

*LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*,
    Case No. 12067, 2019 WL 7369198 (Del. Ch. Dec. 31, 2019) ................................ 12

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
    945 F.2d 635 (3d Cir. 1991) ................................................................. 4

*Nostalgia Network, Inc. v. Lockwood*,
    315 F.3d 717 (7th Cir. 2002) ............................................................... 4

*Official Comm. of Unsecured Creditors v. Nat'l Amusements Inc. (In re Midway Games Inc.)*,
    428 B.R. 303 (Bankr. D. Del. 2010) ........................................................ 2

*OptimisCorp v. Waite*,
    Case No. 8773, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015) ................................ 11

*Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*,
    582 B.R. 846 (Bankr. D. Del. 2018) ........................................................ 6

*Stewart v. Wilmington Tr. SP Servs., Inc.*,
    112 A.3d 271 (Del. Ch. 2015) ............................................................. 11

*Stone & Paper Investors, LLC v. Blanch*,
    Case No. 18-0394, 2020 WL 3496694 (Del. Ch. June 29, 2020) ............................ 12

*Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*,
    Case No. 3290-VCP, 2009 WL 1387115 (Del. Ch. May 18, 2009) ........................ 11

*U.S. Bank Nat'l Ass'n v. Fort VII, LLC*,
    Case No. 11-1713, 2013 WL 12333373 (S.D. Tex. Mar. 29, 2013) ........................ 8

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014) ............................................................... 6

*Windsor I, LLC v. CWCapital Asset Mgmt. LLC*,
    238 A.3d 863 (Del. 2020) ................................................................. 12

Statutes

11 U.S.C. § 542(b) ................................................................................ 11

11 U.S.C. § 548(a)(1)(A) ......................................................................... 1

11 U.S.C. § 548(a)(1)(B) ...................................................................... 3, 8

Tex. Bus. & Comm. Code § 24.005(a) ......................................................................... 10

Tex. Bus. & Comm. Code § 24.005(a)(1)........................................................................ 9

Defendants[2] respectfully submit this reply to *Plaintiff's Response to Defendants' Motion to Dismiss First Amended Complaint* [Dkt. No. 30] ("Opposition" or "Opp.") and in further support of the Motion:

## REPLY

## I.    The Actual Fraudulent Transfer Claim Fails.

Plaintiff argues it is not required to allege badges of fraud because it has "direct evidence of Defendants' fraudulent intent." Opp. at 4. *Defendants'* fraudulent intent, however, is irrelevant under Section 548(a)(1)(A), under which a transfer may be avoided if "*the debtor* . . . made such transfer . . . with actual intent . . . ." 11 U.S.C. § 548(a)(1)(A) (emphasis added). Any allegation that MDC Energy acted with actual intent to defraud creditors is implausible; indeed, most of the transferred funds were used *to pay creditors*. *See* Compl. ¶ 41. Moreover, Plaintiff's allegations of intent to "pilfer" $8.5 million from MDC Energy as payments to Siffin rest solely on the bald legal conclusion—which deserves no deference from the Court—that "Siffin was already obligated to provide the services he was performing for MDC Energy." Opp. at 5-6. Nor does the Complaint state whether—or explain why—MDC Energy agreed with Plaintiff's legal theory when it made the transfers. Thus, the Complaint does not give rise to a "strong inference of fraudulent intent," as required under Rule 9(b). *See Logical Design Sols., Inc. v. CVS Pharmacy, Inc.*, Case No. 20-12077, 2021 WL 926614, at *4 (D.N.J. March 11, 2021) (internal quotation marks omitted).

Nor has Plaintiff properly alleged the relevant badges of fraud. *First*, the Complaint does not sufficiently allege *balance sheet* insolvency, which is the only relevant inquiry as a matter of law *and according to the Complaint itself*. *See* Compl. ¶ 70 ("MDC Energy was insolvent . . .

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Opening Brief in Support of Defendants' Motion to Dismiss First Amended Complaint* [Dkt. No. 27] (the "Motion").

because the value of its assets [was] much smaller than its total debts"); *In re NovaPro Holdings, LLC*, Case No. 14-10895, 2018 WL 2102323, at *7 (Bankr. D. Del. May 4, 2018), *aff'd*, 815 F. App'x 655 (3d Cir. 2020) (trustee's failure to prove insolvency on a balance-sheet basis "eliminates one of the significant 'badges of fraud'"). Both cases Plaintiff cites—*Burtch v. Seaport Cap., LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626 (Bankr. D. Del. 2012) and *Official Comm. of Unsecured Creditors v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303 (Bankr. D. Del. 2010)—are inapposite because most of the factors they list relate to *cash flow* and *insufficient capital* insolvency, which are only relevant to constructive avoidance claims under Section 548(a)(1)(B). In any event, even if those factors were relevant, the Complaint does not plead: (i) inability to pay debts as they became due; (ii) frozen accounts; (iii) insufficient capital to conduct business; or (iv) "going-concern" qualifier in an audit. *See* Opp. at 8.

Plaintiff faults Defendants for "cherry-picking" certain allegations and failing to consider the Complaint in its entirety, yet none of the allegations recited by Plaintiff give rise to a plausible inference of insolvency, let alone a strong one. *See* Opp. at 8-11. Thus, the declining oil and gas prices do not demonstrate insolvency; rather, they show that MDC Energy's assets were worth much more than what they sold for two years later. *See* Motion at 10-11. Purported defaults related to leverage, interest coverage ratios and plan of developments, or alleged omission of capital expenditures from unaudited financial statements, do not demonstrate insolvency. Nor does Plaintiff's conclusory allegation that "at all times in the last two months of 2018 and the entire year of 2019 . . . MDC Energy's liabilities far exceeded the fair market value of MDC Energy's assets." Compl. ¶ 35. *See Gavin Solmonese, LLC v. Shyamsundar (In re AmCad Holdings, LLC)*, 579 B.R. 33, 38-39 (Bankr. D. Del. 2017) ("Mere recitations by a trustee that a debtor is insolvent are conclusory and will not survive a motion to dismiss."). Finally, Plaintiff's allegations of

mechanics' liens and outstanding debt does not demonstrate MDC Energy's inability to pay its debts (*see* Motion at 21), and the allegation that it "knew" it was incurring debts it would not be able to repay (Compl. ¶ 39) is belied by the allegation that it used most of the transferred funds *to pay trade creditors*. *See In re F-Squared Inv. Mgmt., LLC*, Case No. 17-50716, 2019 WL 4261168, at *19 (Bankr. D. Del. Sept. 6, 2019) (allegation that ability to pay debts was "limited" did "not rise to the level of 'inability'"). In short, Plaintiff's allegations do not establish insolvency.

*Second*, the Complaint does not properly allege lack of reasonably equivalent value. As for the payments to Trade Creditors, the Complaint itself admits that this purported badge of fraud only purportedly applies to the transfers to Siffin. *See* Compl. ¶ 70 ("[A]t least as it pertains to the $8.5 million . . . retained by MDC Acquisition as fees for Siffin's alleged services, the value of the consideration received by MDC Energy, if any, was not reasonably equivalent to the value of the transfers[.]"). The Court should ignore Plaintiff's new allegation that the payment of debt does not constitute reasonably equivalent value. Opp. at 14. *See Hammond v. City of Phil.*, Case No. 00-5082, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss[.]"). Plaintiff's argument is further contradicted by the fact that it does not allege a constructive fraudulent transfer—which similarly requires lack of reasonably equivalent value—with respect to the payments to Trade Creditors. Compl. ¶ 76.

Moreover, whether MDC Energy owed money to MDC Acquisition (Opp. at 14) is irrelevant because, as shown below and in the Motion (at 29-30), MDC Acquisition was a mere conduit and not an initial transferee of the funds paid to the Trade Creditors. The cases cited by Plaintiff are therefore inapposite. *See* Opp. at 14. *Cardiello v. Arbogast*, 533 F. App'x 150 (3d Cir. 2013) involved an initial transfer by the debtor to an entireties account, which placed "the funds out of all creditors' reach." *Id.* at 157-58. Here, far from placing funds out of all creditors'

reach, MDC Energy transferred the funds to MDC Acquisition *with the express instruction to use those funds to pay creditors*. *See* Compl. ¶ 30 ("MDC Energy funded MDC Acquisition to either pay or reimburse payments MDC Acquisition made to MDC Energy's trade creditors."). Moreover, the *Cardiello* court held that, *even if* the initial transfer hinders creditors, "uses to which the funds are later put may also be relevant . . . insofar as a later received benefit, either direct or indirect . . . may confer 'reasonably equivalent value.'" *Id.* at 158; *see also Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991) ("[I]n evaluating whether reasonably equivalent value has been given . . . indirect benefits may also be evaluated.").[3]

As for the payments to Siffin, Plaintiff urges the Court to accept the allegation that "Siffin already had a legal duty to perform" the services at issue. Opp. at 12. As explained, Plaintiff's legal conclusion concerning Siffin's contractual arrangement with MDC Energy is not entitled to deference. *See* Motion at 15; *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 808 (3d Cir. 2006) ("[T]he District Court did not need to credit the assertions that the defendant 'breached' and 'revoked' a contract . . . Stating that a contract was breached is stating a legal conclusion."). That "Siffin had a well-recognized fiduciary obligation to pursue all corporate business opportunities" (Opp. at 12) does not mean, of course, that he was required to work *for free*.[4] Moreover, while Plaintiff argues that the issue of reasonably equivalent value requires a

---

[3]    Similarly, *Nostalgia Network, Inc. v. Lockwood*, 315 F.3d 717 (7th Cir. 2002) is inapposite because it involved a gratuitous transfer to the debtor's girlfriend, who was the initial transferee.

[4]    The Court should ignore Plaintiff's improper attempt to attach an article purportedly describing the salaries of Mark Zuckerberg and other Silicon Valley CEOs, which is outside the scope of the documents the Court may consider at this stage. *See ECB USA, Inc. v. Savencia, S.A.*, Case No. 19-731, 2021 WL 3187495, at *19, n.26 (D. Del. July 28, 2021) ("[I]n resolving motions to dismiss pursuant to Rule 12(b)(6), courts may consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents integral to or explicitly relied upon in the complaint."). Moreover, Plaintiff does not explain why Siffin should be compared to CEOs who hold highly liquid shares of public companies with market capitalizations of billions of dollars.

factual determination that cannot be made on a motion to dismiss (Opp. at 13), it "must allege some facts that would ultimately support a finding regarding the lack of reasonably equivalent value." *Insys Liquidation Tr. v. Quinn Emanuel Urquhart & Sullivan, LLP (In re Insys Therapeutics, Inc.)*, Case No. 21-50359, 2021 WL 5016127, at *4 (Bankr. D. Del. Oct. 28, 2021). Here, the Complaint is premised on the erroneous assumption that there was no reasonably equivalent value simply because the transactions Siffin pursued did not materialize. Compl. ¶¶ 42-43. Thus, even if Plaintiff can prove that none of the transactions closed, that allegation does not support its claim *as a matter of law*. *See* Motion at 14.

*Third*, Plaintiff ignores the other badges of fraud and instead cites "additional facts" that purportedly "support an inference of actual fraud." *See* Opp. at 15. Not so. Plaintiff cannot explain why alleged statements by non-Defendants Quinn and Cyphers concerning the transfers (Compl. ¶ 51) should be imputed to MDC Energy. Moreover, far from being "concealed," the lion's share of the funds was transferred to Trade Creditors, and one alleged anecdote concerning MDC Energy's dealings with Tier One does not establish a pattern of "broken promises to creditors." *See* Motion at 20-21. Nor does the purported deterioration of MDC Energy's financial condition support an inference of fraud. *See Carr v. Britton*, Case No. 14-1931, 2015 U.S. Dist. LEXIS 35687, at *2, n.3 (M.D. Pa. March 23, 2015) ("[D]espite proof of IAAS's deteriorating financial condition, the trustee did not establish that IAAS was insolvent at the time of the disputed transfers as required for avoidance[.]"). Accordingly, the actual fraudulent transfer claim fails. [11]

## II.   **The Constructive Fraudulent Transfer Claim Fails.**

The constructive fraudulent transfer claim fails because, as explained above and in the Motion, Plaintiff has not properly alleged lack of reasonably equivalent value. *See* Motion at 18-19. Plaintiff's allegation that the transactions between MDC Energy and Siffin "were not made in

good faith" (Opp. at 17) circularly and incorrectly assumes that Siffin was not entitled to compensation for his services.  Plaintiff further recites its bald allegation that it is not "customary to pay $8.5 million for undefined services over an undefined period of time . . . to a CEO in the oil and gas industry in the absence of a written agreement."  Opp. at 18 (internal quotation marks omitted).  The Court should ignore this purported, conclusory "expert" view.  *See Varela v. Gonzales*, 773 F.3d 704, 709-10 (5th Cir. 2014) (views of experts may be considered at dismissal stage only insofar as they state "nonconclusory factual" allegations, not mere opinions); *Koehler v. Litehouse, Inc.*, Case No. 12-04055, 2012 WL 6217635, at *2-3 (N.D. Cal. Dec. 13, 2012) (allegations that "relay . . . expert opinion," but "make[] no statements of fact" add no value to the pleadings and are not properly considered in deciding a motion to dismiss).

As explained above and in the Motion, Plaintiff's insolvency allegations are insufficient. Plaintiff argues that it need not include "precise calculations evidencing balance sheet insolvency." Opp. at 19 (citing *Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 858-59 (Bankr. D. Del. 2018)).  Plaintiff's insolvency allegations fail not because they lack "precise calculations," but because even if they were true, they would not establish insolvency under Section 548(a)(1)(B) of the Bankruptcy Code.  *See* Motion at 19-21. Accordingly, the constructive fraudulent transfer claim fails.

### III.    The Preference Claim Fails.

Plaintiff does not dispute that, to avoid preferential transfers, the Complaint must include the identity of each transferee, the amounts involved, and the dates on which the transfers occurred. *See* Opp. at 20; Motion at 22.  Instead, Plaintiff incorrectly argues that identifying MDC Acquisition as a purported transferee—instead of the Trade Creditors who were repaid—is sufficient.  *See* Opp. at 20.  Because MDC Acquisition was a mere conduit and not an initial

transferee, however, the purported transfers to it are irrelevant. *See* Motion at 29-30. For the same reason, Plaintiff's failure to identify any of the Trade Creditors as insiders is fatal to its preference claim. *See id.* at 25. Moreover, while Plaintiff has alleged in the alternative that MDC Acquisition was a creditor of MDC Energy (Compl. ¶ 77), it does not (and cannot) explain why MDC Acquisition would use funds that were used to repay *its debt* to pay *other creditors* of MDC Energy. These inconsistent allegations cannot plausibly support a preference claim. *See Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 500 (W.D. Pa. 2013) ("[W]hat is pled alternatively must still have a plausible basis grounded in fact.").

Plaintiff argues that it is not required to allege MDCE Investments' and Maefield's hypothetical Chapter 7 recovery and creditor status because they were "subsequent transferees." Opp. at 20-22. The Complaint alleges, however, that the funds transferred to those Defendants passed through MDC Acquisition (Compl. ¶ 81), which acted as a mere conduit and was not an initial transferee. MDCE Investments and Maefield were therefore the entities that allegedly received a "transfer of an interest of the debtor in property" under Section 547(b). Plaintiff must therefore allege their hypothetical Chapter 7 recoveries and creditor status. *See* Motion at 23-25.

As for insolvency, Plaintiff does not dispute that only six of the seventeen alleged transfers were made within 90 days before the Petition Date, during which insolvency is presumed. *See* Opp. at 21. Nor does it address its failure to allege the correct insolvency standard under Section 547, *i.e.*, balance-sheet insolvency. Accordingly, the preference claim fails.

## IV. <u>The Claims Under TUFTA Fail.</u>

Plaintiff summarily dismisses Defendants' arguments as "largely repeat[ing] their federal fraudulent transfer arguments" and completely ignores Defendants' detailed analysis of the specific provisions of TUFTA and relevant case law, under which Plaintiff's claims fail as a matter

of Texas law.  *See* Opp. at 25-26; Motion at 25-29.  Moreover, Plaintiff incorrectly argues that its

allegation that "*Defendants* intended to incur . . . debts beyond [MDC Energy's] ability to pay as

they became due . . . is all that is required."  Opp. at 25 (emphasis added).  Not so.  TUFTA requires

Plaintiff to show that "*the debtor* made the transfer or incurred the obligation . . . with actual intent

to . . . defraud any creditor of the debtor."  Tex. Bus. & Comm. Code § 24.005(a)(1) (emphasis

added); *see also U.S. Bank Nat'l Ass'n v. Fort VII, LLC*, Case No. 11-1713, 2013 WL 12333373,

at *7 (S.D. Tex. Mar. 29, 2013) ("A creditor has the burden to prove a *debtor's* fraudulent intent

[under Section 24.005(a)]; such intent must be *affirmatively* shown and will not be presumed.")

(emphasis added).  Accordingly, each of Plaintiff's TUFTA claims fails.

## V.    MDC Acquisition Was a Mere Conduit—Not an Initial Transferee.

Plaintiff urges the Court to ignore Defendants' arguments and treat them as "summary

judgment contentions" because the Complaint "did not plead that MDC Acquisition was a 'mere

conduit.'"  Opp. at 23.  Whether Plaintiff chose to designate MDC Acquisition as a mere conduit

is irrelevant; the question is whether its allegations support the conclusion that MDC Energy had

"dominion and control" over the transferred assets.  As shown in the Motion, they do not.  *See*

Motion at 29-30.  Plaintiff asserts that the Complaint "gives no credence" to Defendants'

characterization of the transfers to MDC Acquisition as a "cash management" system.  Opp. at 27.

However, the Complaint plainly alleges that (i) the transfers to MDC Acquisition were "part of an

undocumented 'cash management' arrangement" (Compl. ¶ 2); (ii) Siffin's plan was to make,

through MDC Acquisition, "preferential payments to certain creditors" (*id.* ¶ 39); and (iii) "MDC

Energy funded MDC Acquisition to either pay or reimburse payments MDC Acquisition made to

MDC Energy's trade creditors" (*id.* ¶ 30).  Those allegations—*which were all made by Plaintiff*—

clearly demonstrate that MDC Acquisition never had control over the transferred funds.

Plaintiff curiously argues that MDC Acquisition could not have been a mere conduit because it was a creditor. Opp. at 23. The Complaint is expressly premised, however, on the allegation that MDC Energy transferred funds to MDC Acquisition, "*to which MDC Energy owed no money*," to make "preferential payments to specific creditors[.]" *Id.* at 14 (emphasis in original). This renders MDC Acquisition a conduit as a matter of law. Indeed, MDC Acquisition was a mere conduit for the additional reason that it received *no benefit* from funneling MDC Energy's funds into the hands of Trade Creditors. *See Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("Bank was not the 'initial transferee' of Bonded's check even though it was the payee. The Bank acted as a financial intermediary. It received no benefit."); *In re Mervyn's Holdings, LLC*, 426 B.R. 96, 103 (Bankr. D. Del. 2010) (defendant was not a transferee under Section 550 when it acted as a financial intermediary and "received no benefit"); *See In re Gruppo Antico, Inc.*, 359 B.R. 578, 585 (Bankr. D. Del. 2007) ("the term 'initial transferee' references something more particular than the initial recipient . . . Every Court of Appeals to consider this issue has squarely rejected a test that equates mere receipt with liability").

Plaintiff's allegation that "Siffin exercised control of *all* of the funds transferred to MDC Acquisition" (Opp. at 23) also bolsters the conclusion that MDC Acquisition never had dominion and control over the funds. Moreover, Plaintiff does not (and cannot) allege that Siffin was the initial transferee of the funds that were sent to Trade Creditors (*see* Opp. at 20) because Siffin did not benefit from payments made to satisfy third-party debts. *See Mervyn's*, 426 B.R. at 103.

## VI.    <u>The Transfer from Non-Debtor BML Cannot Be Avoided.</u>

Plaintiff alleges for the first time that the transferred funds were property of MDC Energy because they were paid in satisfaction of an account receivable. Opp. at 24. The Complaint does *not* allege, however, that BML owed a debt "that is matured [and] payable on demand," as required

to render it estate property. *See* 11 U.S.C. § 542(b).[5]  Nor does Plaintiff explain why MDC Energy's view that the transfer was a payment from MDC Energy (Opp. at 24) is dispositive to the question of whether the transferred funds belonged to it as a matter of law.  Accordingly, based on Plaintiff's own allegations, the funds transferred by BML were not property of MDC Energy's estate and, as such, cannot be avoided. *See* Motion at 31.

## VII.    The Alter Ego Claim Fails.

While attempting to distance itself from the allegation that MDC Acquisition served as a "cash management" system used to pay Trade Creditors (*see* Opp. at 27), the Complaint clearly alleges that "MDC Energy funded MDC Acquisition to either pay or reimburse payments MDC Acquisition made to MDC Energy's trade creditors."  Compl. ¶ 30.  Thus, far from "serving no legitimate business purpose," MDC Acquisition served one of MDC Energy's most important business purposes: paying its creditors. *See Gilman v. Walters*, 61 F. Supp. 3d 794, 805 (S.D. Ind. 2014).  Nor can Plaintiff credibly argue that MDC Acquisition was "used primarily as an intermediary to perpetuate fraud or promote injustice" (*id.*), when the lion's share of the funds ($15 million) was used to pay creditors.  The allegation that "Siffin used MDC Acquisition to hold his own cash" (Compl. ¶ 31) also is implausible because Plaintiff cannot explain why Siffin would use "his own cash" to pay *MDC Energy's* creditors.  Accordingly, the alter ego claim fails.

## VIII.    The Breach of Fiduciary Duty Claim Fails.

Plaintiff asserts for the first time that Delaware law applies to the breach of fiduciary duty claim. *See* Opp. at 28.  Even if Delaware law applies, however, there can be no breach of fiduciary

---

[5]      *Dobin v. Presidential Fin. Corp. (In re Cybridge Corp.)*, 304 B.R. 681 (Bankr. D.N.J. 2004) is therefore inapposite because it involved the unauthorized collection of the debtor's accounts receivable in connection with the debtor's post-petition provision of services to its customers, which were indisputably property of the estate. *See id*. at 683.

duty claim as to the $15 million transferred to Trade Creditors.  Plaintiff claims that the disputed transfers were a breach of the duty of loyalty (Opp. at 29) but does not dispute that paying Trade Creditors was in "the best interest of the corporation," as the duty of loyalty requires.  *See OptimisCorp v. Waite*, Case No. 8773, 2015 WL 5147038, at *59 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016).  Similarly, Siffin was not "on both sides of the transaction"; only MDC Energy (the transferor) and Trade Creditors (the transferees) were.  *See In re The Brown Schs.*, 386 B.R. 37, 47 (Bankr. D. Del. 2008).

Plaintiff cites *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, Case No. 3290-VCP, 2009 WL 1387115 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) for the proposition that it need not show harm to MDC Energy to sustain its claim.  Opp. at 29-30.  Not so.  As the *Triton* court made clear, "Delaware law does not require certainty in the award of damages in cases where the plaintiff has proved that a defendant committed a wrong and *established that an injury occurred*." *Triton*, 2009 WL 1387115, at *28 (emphasis added).  Here, the Complaint fails to allege any injury to MDC Energy; only the Lenders were injured.  *See* Motion at 34.

Citing *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271 (Del. Ch. 2015), Plaintiff argues that *in pari delicto* does not apply to claims against officers and employees.  Opp. at 30.  The *Stewart* court, however, held that the "fiduciary duty exception" applies only to protect stockholders' and creditors' "remedy for the wrongdoing *that caused them harm*." *Stewart*, 112 A.3d at 304 (emphasis added); *see also In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1108 (Del. Ch. 2003) (applying the exception because the *in pari delicto* defense would "leave the constituencies of corporate entities . . . with no recourse *when their corporation is injured by its managers*.") (emphasis added).  Here, because MDC Energy did not suffer harm, the exception does not apply.  Accordingly, the breach of fiduciary claim against Siffin fails.

11

IX.    <u>The Unjust Enrichment Claim Fails.</u>

Plaintiff argues that MDC Energy was impoverished by the transfers because they "rendered MDC Energy unable to fund operations or pay its vendors."  Opp. at 32.  The Complaint itself alleges, however, that had the funds not been transferred they would have been swept by the Lenders.  Compl. ¶ 32.  As such, there is no causation between the purported enrichment and impoverishment.  *See Stone & Paper Investors, LLC v. Blanch*, Case No. 18-0394, 2020 WL 3496694, at *12 (Del. Ch. June 29, 2020); *see also Helicopter Helmet, LLC v. Gentex Corp.*, Case No. 17-00497, 2018 WL 2023489, at *4 (D. Del. May 1, 2018) (plaintiff must be impoverished of a benefit to which it is entitled); *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 876 (Del. 2020) (dismissing unjust enrichment claim where plaintiff would spend the money at issue regardless of defendant's conduct, and therefore defendant's conduct did not cause the plaintiff damages).  Nor can Plaintiff credibly argue that any of the Defendants were enriched by the transfers made to Trade Creditors.  *See LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, Case No. 12067, 2019 WL 7369198, at *31 (Del. Ch. Dec. 31, 2019) (the purported enrichment cannot be speculative or attenuated).

Plaintiff incorrectly argues that its unjust enrichment claim is not duplicative of its fraudulent transfer claims because they "do not require proof of the same elements," including insolvency.  Opp. at 33.  *The Complaint itself*, however, predicates the unjust enrichment claim on the fraudulent transfer claims, which renders it entirely duplicative.  *See* Compl. ¶ 108 ("To the extent Defendants received fraudulent transfers . . . .).  Moreover, the Complaint's unjust enrichment claim contains an allegation that the transfers "rendered MDC Energy unable to fund operations or pay its vendors."  Compl. ¶ 109.  Thus, Plaintiff alleges insolvency as an element of its unjust enrichment claim.  *In re Green Field Energy Servs., Inc.*, Case No. 13-12783, 2015 WL

5146161 (Bankr. D. Del. Aug. 31, 2015) is therefore inapposite because there, unlike here, failure to prove insolvency would not have doomed plaintiff's unjust enrichment claim.  *Id*. at *10. Accordingly, the unjust enrichment claim fails.

**X.**     **The Conspiracy and Aiding and Abetting Fraudulent Transfers and Breach of Fiduciary Duty Claims Fail.**

Even if Delaware law applies to the aiding and abetting and conspiracy claims, both claims fail as a matter of law.  As a preliminary matter, Plaintiff does not dispute that a claim for aiding and abetting fraudulent transfers does not exist as a matter of law.  *See* Motion at 38.

As to the aiding and abetting and/or conspiracy claims relating to breach of fiduciary duty, Plaintiff also fails to state a cognizable claim.  In Delaware, to state a claim for aiding and abetting, the plaintiff must allege: "(1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, *who is not a fiduciary*, knowingly participated in [the] breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002) (emphasis added).  Here, Plaintiff is unable to satisfy several of those elements.

*First*, Delaware law only permits an aiding and abetting claim to proceed against a defendant "who is not a fiduciary."  *Id.*  Plaintiff alleges that Cyphers and Quinn "operating as agents for Maefield substantially assisted MDC Acquisition and Siffin by actually performing the fraudulent transfers and by attempting to justify them after the fact through the creation of sham invoices at the direction of Siffin in breach of his fiduciary duties."  Compl. ¶ 113.  Because Plaintiff alleges that Cyphers and Quinn are fiduciaries of MDC Energy based on their positions within the company, the claim fails.[6]

---

[6]     To the extent Plaintiff asserts this claim against Siffin, the claim fails for the same reason.

*Second*, the claim fails as a matter of law as to all Defendants because, as explained above, MDC Energy suffered no damages. *See* Compl. ¶ 32. *Third*, the claim cannot survive because Defendants did not "knowingly participate" in the purported breach. The "knowing participation" requirement is a "stringent standard that turn[s] on proof of scienter." *In re MeadWestvaco Stockholders Litig.*, 168 A.3d 675, 688 (Del. Ch. 2017) (quoting *Lee v. Pincus*, Case No. 8458, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014). There are no non-conclusory allegations in the Complaint that MDCE Investments and MDC Acquisition acted with scienter. *See id.* (dismissing aiding and abetting claim that lacked any "non-conclusory facts suggesting that RockTenn knew that MeadWestvaco's directors . . . had failed to discharge their fiduciary duties"). Rather, the allegations suggest both entities served as mere passive conduits for the transfer of funds. The claim against Maefield fails because Plaintiff does not properly allege an agency relationship between Maefield, Quinn and Cyphers. *See* Motion at 39.

To properly plead a civil conspiracy claim, "a plaintiff must plead facts supporting (1) the existence of a confederation or combination of two or more persons" (*i.e.*, "acted in concert"); "(2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). Here, again, Plaintiff has not demonstrated that he suffered actual damages. Moreover, the "confederation" element requires "evidence of . . . *an agreement or actions that constitute an agreement*." *In re Am. Business Fin. Servs., Inc.*, 457 B.R. 314, 325 (Bankr. D. Del. 2011) (dismissing conspiracy claim where the complaint lacked any evidence of an agreement among the defendants) (emphasis added). Here, there is simply no allegation that the Defendants had an agreement to perpetrate fraud. Furthermore, there is no allegation of "specific intent" by Maefield, MDCE Investments or MDC Acquisition. *See Anderson v. Airco, Inc.*, Case No. 02C-

14

12-091, 2004 WL 2827887, at *4 (Del. Super. Ct. Nov. 30, 2004) (dismissing civil conspiracy claim based on negligence).  At most, the Complaint contains "bare allegations supported by no more than speculation and innuendo," which is inadequate to sustain a conspiracy claim.  *See Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261, 1289 (Del. Super. Ct. 2001).  The conspiracy claim therefore fails.

## XI.   __The Waste Claim Fails.__

The Complaint concedes that Siffin provided services to MDC Energy.  *See, e.g.*, Compl. ¶ 42.  While Plaintiff alleges that Siffin did not provide reasonably equivalent value for the $8.5 million he allegedly received, such conduct does not rise to the level of the "rare" and "unconscionable case where directors irrationally squander or give away corporate assets."  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)).  Such a transfer would need to be, in effect, a "gift" for it to constitute waste.  *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997).  Here, the allegations do not demonstrate the transfer was a "gift," even if Siffin's attempts to launch a new business line did not succeed.  *See id.* ("If, however, there is any substantial consideration received by the corporation, and if there is a good faith judgment that in the circumstances the transaction is worthwhile, there should be no finding of waste, *even if the fact finder would conclude ex post that the transaction was unreasonably risky*." (emphasis added)).  This claim therefore fails.

## CONCLUSION

For the reasons set forth herein and in the Motion, Defendants respectfully request that the Court grant the Motion and overrule the Opposition, dismiss the Complaint and grant the Defendants such other and further relief as the Court deems just and proper.

Dated:  April 21, 2022

      Wilmington, Delaware

*By: /s/ Garvan F. McDaniel*
Garvan F. McDaniel (#4167)
**HOGAN McDANIEL**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
E-mail: gfmcdaniel@dkhogan.com

- and -

By: */s/ Andrew K. Glenn*
Andrew K. Glenn (admitted *pro hac vice*)
Marissa Miller (admitted *pro hac vice*)
Shai Schmidt (admitted *pro hac vice*)
Rich Ramirez (admitted *pro hac vice*)
Samantha Bennett (admitted *pro hac vice*)
Naznen Rahman (admitted *pro hac vice*)
**GLENN AGRE BERGMAN & FUENTES LLP**
55 Hudson Yards
20th Floor
New York, New York 10001
Telephone: (212) 358-5600
E-mail: aglenn@glennagre.com
      mmiller@glennagre.com
      sschmidt@glennagre.com
      rramirez@glennagre.com
      sbennett@glennagre.com
      nrahman@glennagre.com

*Counsel to Defendants*
