## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MTE HOLDINGS LLC, *et al.*,<br><br>　　　　Reorganized Debtors. | Chapter 11<br><br>Case No. 19-12269 (CTG)<br><br>(Jointly Administered) |
| RPA Asset Management Services, LLC,<br>Trustee of the MDC Litigation Trust,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Mark Siffin, MDC Acquisition LLC,<br>Maefield Development Corporation, and<br>MDCE Investments LLC,<br><br>　　　　Defendants. | Adversary Case No. 21-51255 (CTG) |

## MEMORANDUM OPINION

The allegation at the heart of this lawsuit is that, as the debtors were spiraling into bankruptcy, the company's principal moved $23.5 million, in a series of transactions, from the debtors' bank accounts to that of an affiliated company. The reason for these transfers was that the debtors had defaulted on their credit facilities. Under the terms of those loans, the lenders would have been permitted to seize the cash in the debtors' bank accounts. The transfers, it is alleged, were part of a cat-and-mouse game intended to thwart the secured creditors' exercise of legal remedies. In the end, the trustee acknowledges that $15 million of the transferred funds were

ultimately used to pay valid trade debt owed by the debtors.  $8.5 million was used to pay the debtors' principal.  The trustee disputes that such a debt was properly due.

The trustee brings a variety of different claims arising out of these events, including claims for intentional and constructive fraudulent conveyance, preference, breach of fiduciary duty, veil piercing, and other claims.  The defendants, who are the debtors' principal and entities he is alleged to have controlled, have moved to dismiss each of the counts.  For the reasons set forth below, the Court will deny the motion except for the count for veil piercing, which will be dismissed without prejudice to the trustee's right to re-plead.

## Factual Background

MTE Holdings and its affiliates, based in Midland, Texas, were in the business of oil and gas exploration and development.  Substantially all of the debtors' assets were sold under a confirmed plan of reorganization.[1]  That plan also established a litigation trust to pursue certain estate causes of action.  The trustee of that litigation trust[2] has sued Mark Siffin, the debtors' former principal owner and CEO, along with

---

[1] *See In re MTE Holdings LLC, et al.*, No. 19-12269 (CTG) (Bankr. D. Del. Sept. 3, 2021), D.I. 2590.

[2] The plaintiff in this lawsuit is RPA Asset Management Services, LLC, which serves as the trustee under the trust established by the plan.  D.I. 24 ¶ 6.  It is referred to herein as the "trustee."

a number of other entities he allegedly controls.[3]  The suit arises out of transactions that, according to the trustee, occurred as the debtors were approaching bankruptcy.[4]

The nub of the trustee's allegation is that, as a result of declines in oil and gas prices as well as MDC Energy's failure to meet its projected levels of production, MDC Energy defaulted under its credit agreements, thus entitling its secured creditors to sweep its bank accounts.[5]  In order to maintain control of its cash, the trustee alleges that Siffin directed that approximately $23.5 million be transferred, in a series of 17 transfers that took place over ten months, to Acquisition, an affiliate that Siffin also owned but whose bank account was not subject to being swept by MDC Energy's lenders.  The trustee asserts that of the $23.5 million, approximately $15 million was ultimately used, in the period before the bankruptcy, to pay trade creditors of MDC Energy – generally those that had threatened or brought litigation or that would not provide further goods or services without payment.  The remaining $8.5 million was paid to Siffin.  While Siffin argues that these were payments that were legitimately due for services Siffin provided to his company, the trustee asserts (which assertion must of course be taken as true on a motion to dismiss) that the invoices that Siffin submitted supporting the payments to himself were fraudulent and that Siffin was not legally entitled to any such payment.  Further descriptions of the complaint's

---

[3] D.I. 24.   The defendants are Mark Siffin, MDC Acquisition LLC (referred to as "Acquisition"), Maefield Development Corporation (referred to as "Maefield"), and MDCE Investments LLC (referred to as "MDCE Investments").

[4] The debtor entity alleged to be the transferor in the transactions challenged in the complaint is MDC Energy LLC, which is referred to as "MDC Energy."

[5] D.I. 24 ¶¶ 20-22.

factual allegations are included, to the extent necessary, in the analysis section of this Memorandum Opinion.

## Jurisdiction and Authority

The district court has jurisdiction over this action under 28 U.S.C. § 1334(b), as the claims asserted herein either "arise under" the Bankruptcy Code or (to the extent the claims arise under state law) are "related to" the bankruptcy case. The proceeding has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of reference. Defendants seeks to exercise their rights to an adjudication before an Article III tribunal on those claims for which they have such a right, and thus do not consent to this Court's entry of final judgment on those claims that are non-core.[6] While the matter need not be resolved at this stage of the litigation, this Court will address which of the claims are core and non-core at an appropriate point.

## Analysis

A complaint must contain a "short and plain statement of the claim[s] showing that the pleader is entitled to relief."[7] In substance, that means that a complaint must provide the defendant with fair notice of the claims alleged such that the defendant can defend against those claims.[8] The factual allegations in a complaint

---

[6] D.I. 27 at 41.

[7] Fed. R. Civ. P. 8(a)(2). *See also Connelly v. Lane Construction Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (highlighting that a complaint can be dismissed for failing to state a claim, but that "detailed pleading" is not required). Rule 8 is made applicable here by Federal Rule of Bankruptcy Procedure 7008.

[8] *In re Zohar III*, No. 18-10512 (KBO), 2021 WL 3124298 at *5 (Bankr. D. Del. Jul. 23, 2021) (citing *In re Lexington Healthcare Grp., Inc.*, 339 B.R. 570, 575 (Bankr. D. Del. 2006)).

must provide notice to the defendant "as to the basics of the plaintiff's complaint"[9] and set forth fact-based allegations that stretch beyond "naked assertions" and conclusory allegations.[10]

As the Supreme Court's decisions in *Iqbal* and *Twombly* direct, in considering a motion to dismiss a court employs "a plausibility standard – it requires more than a sheer possibility that a defendant acted unlawfully but is not akin to the probability standard.  Rather, a plaintiff must allege sufficient facts to nudge the claims across the line from conceivable to plausible."[11]

The Third Circuit explained in *Burtch v. Milberg Factors, Inc.*[12] that this analysis entails a three-step process.  A court should: (i) identify the elements of the claim alleged by the plaintiff, (ii) identify and separate the well-pleaded facts from legal conclusions, and (iii) "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[13]  In

---

[9] *Id.*

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[11] *Superior Silica Sands LLC v. Iron Mountain Trap Rock Co.*, No. 20-51052 (KBO) (Bankr. D. Del. Aug. 26, 2021), D.I. 31 at 4 (Memorandum Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the First Amended Complaint) (internal quotations and citations omitted).

[12] 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[13] *Crystallex Int'l Corp. v. Petrólesos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018) (quoting *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

addition, in considering a motion to dismiss a court must "draw all reasonable inferences," from the facts as they are alleged, "in favor of the non-moving part[y]."[14]

## I.   The complaint adequately alleges intentional fraudulent conveyance under § 548(a)(1)(A) (Count I).

Under Section 548(a)(1)(A), a trustee may avoid any transfer of an interest of the debtor in property, if the debtor "made such transfer . . . with actual intent to hinder, delay or defraud" any creditor.  "As one might expect, debtors rarely announce their fraudulent intentions for the world to hear."[15]  Accordingly, courts commonly will determine whether fraudulent intent can be inferred from the presence or absence of various "badges of fraud."[16]  Siffin moves to dismiss this complaint, arguing that the complaint fails adequately to allege such badges of fraud.[17]

This argument, however, confuses the forest for the trees.  Badges of fraud need not be alleged in a case in which a complaint adequately alleges facts that would support a direct inference that a transfer was made with the actual intent to hinder, delay or defraud creditors.  And while it is true that claims of fraud need to be pled with particularity, the complaint certainly adequately alleges, in sufficient detail, that MDC Energy transferred $24.5 million to MDC Acquisition for the purpose of preventing the debtors' lender from sweeping the funds.

---

[14] *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 921 n.1 (3d Cir 2015).

[15] Charles Jordan Tabb, *The Law of Bankruptcy* 581 (4th ed. 2016).

[16] *Zohar*, 631 B.R. at 174.

[17] D.I. 27 at 11-17.

As the Supreme Court has explained, a fraudulent conveyance claim, at its core, is one that alleges "a debtor's transfer of assets that … impairs a creditor's ability to collect the debt."[18]  The heartland of the activity to which the law of fraudulent conveyance is directed are efforts to "hide assets from creditors by giving them to one's family, friends, or associates."[19]

That is exactly what the complaint alleges that MDC Energy sought to do when it transferred the $24.5 million to MDC Acquisition so that the funds would not be swept by MDC Energy's lenders.  The fact that MDC Energy is alleged also to have had some inchoate intent, at the time of the transfers, to use some undetermined portion of those funds to pay some of MDC Energy's valid creditors does not change the fact that the transfer of the $24.5 million to MDC Acquisition was alleged to have been made in order to keep those funds outside the grasp of a valid creditor.  There is certainly no allegation that any particular transfer to MDC Acquisition was made with any direction or requirement that the funds be used to pay a particular creditor. There can therefore be no suggestion (based on the allegations of the complaint alone) that the funds were earmarked for any creditor[20] or the MDC Acquisition was a "mere conduit."[21]  The allegations that the transfer was made in order to frustrate any effort

---

[18] *Husky Inter'l Elec., Inc. v. Ritz*, 578 U.S. 356, 360 (2016).

[19] *Id.* at 361.

[20] *See In re FBI Wind Down, Inc.*, 581 B.R. 116, 132-135 (Bankr. D. Del. 2018) (describing the earmarking doctrine).

[21] *See In re Lenox Healthcare, Inc.*, 343 B.R. 96, 103 (Bankr. D. Del. 2006) (a mere conduit must be an entity that "lacked dominion and control over the transfer because the payment simply passed through its hands, and it had no power to redirect the funds to its own use") (citation and internal quotation omitted).

by MDC Energy's lenders to sweep the cash is more than adequate to allege an intentional fraudulent conveyance under § 548(a)(1)(A).

## II. The complaint adequately alleges constructive fraudulent conveyance under § 548(a)(1)(B) (Count II).

Even in the absence of actual intent to hinder, delay, and defraud creditors, a transfer may be avoided under § 548(a)(1)(B) if it is made for less than reasonably equivalent value and made at a time when the debtor was insolvent. The complaint alleges that the $8.5 million that was ultimately paid to Siffin is avoidable as a constructive fraudulent conveyance.

Defendants argue that the complaint fails to allege the absence of reasonably equivalent value or insolvency.

### A. The complaint adequately alleges the absence of reasonably equivalent value.

In moving to dismiss, defendants argue that Siffin provided services to the debtors in exchange for the $8.5 million. The complaint alleges that the "services" that the $8.5 million was paying for either (i) related to transactions that failed to close (such that the transactions provided no value to the debtors), (ii) were for services that Siffin was obligated to provide as CEO in any event; and/or (iii) were not the subject of any agreement that would obligate the debtors to pay for those services.[22]

In moving to dismiss, Siffin argues that even indirect benefits count as reasonably equivalent value and that it is not believable that Siffin would otherwise

---

[22] D.I. 24 ¶ 74.

be obligated to provide services to MDC Energy as CEO in view of the fact that he did not receive a salary.[23]

The trustee responds by noting that the complaint alleges that the debtors received *no* value for the $8.5 million payment.[24]  The argument Siffin advances is not one that is properly considered at the motion to dismiss stage.  His contention is that the trustee is wrong to say that he was paid for doing work that he was already obligated to do as CEO, and that the payment was actually a commission for his efforts to bring valuable business opportunities to the debtors.  It may well be true that Siffin brought to the debtors valuable opportunities for which he was entitled to compensation, and that the $8.5 million payment was reasonable compensation for those services.  But that is not what the complaint alleges, and the allegations of the complaint must be taken as true for purposes of this motion.  To that end, the complaint says that there were no agreements under which the debtors were obligated to pay any commissions,[25] and that "sham" invoices were generated months after the services were provided, containing "contradictory" and "changing payment amounts and justifications."[26]  Accepting those allegations as true, as a court must in considering a motion to dismiss, the complaint adequately alleges that the debtors failed to receive reasonably equivalent value in exchange for the $8.5 million in payments to Siffin.

---

[23] D.I. 27 at 19.

[24] D.I. 30 at 17 (citing D.I. 24 ¶¶ 61-62).

[25] D.I. 24 ¶ 61.

[26] *Id.* ¶ 41.

## B.    The complaint alleges that MDC Energy was insolvent at the time of the transfers.

For a transfer to be a constructive fraudulent conveyance, the debtor needs to have been (or have become) insolvent at the time the transfer was made (under § 548(a)(1)(B)(ii)(I)), or otherwise satisfy one of the other standards set out in § 548(a)(1)(B)(ii).  "Insolvent" is defined in the Bankruptcy Code on a balance sheet basis – when "the sum of such entity's debts is greater than all of such entity's property, at fair valuation."[27]

Paragraph 75 of the complaint specifically alleges that at "the time of each of the transfers, the fair market value of MDC Energy's total assets was less than $100 million.  At the time of each of the transfers, MDC Energy's total debts exceeded at least $200 million."[28]  The defendants argue that the fact that the assets ultimately sold for $100 million two years after the transfers is an insufficient basis to conclude that they were only worth $100 million at the time of the transfers.[29]  And that would be a fair argument if the allegation in the complaint was that the assets were ultimately sold for $100 million.  But that is not what the complaint alleges.  It alleges that they were worth less than $100 million at the time of the transfer.  That is a specific and concrete allegation.  Defendants' argument in this regard, like many of the others they advance, at bottom reflects their disagreement with the complaint's allegations rather than challenging their legal sufficiency.  Defendant is of course

---

[27] 11 U.S.C. § 101(32)(A).

[28] D.I. 24 ¶ 75.

[29] D.I. 27 at 20.

entitled to the opportunity to argue that the allegations of the complaint are false. But a motion to dismiss the complaint is not that time. The factual assertions set forth in the complaint sufficiently allege insolvency.

## III. The complaint adequately alleges the elements of a preference claim (Count III).

The third count in the complaint, pled in the alternative, is that to the extent the $8.5 million paid to Siffin in fact paid down a valid antecedent debt that MDC Energy owed to him, that it is avoidable as a preference under § 547 of the Bankruptcy Code. Defendants move to dismiss on the ground that the complaint (i) fails to identify the transferees, (ii) does not allege a hypothetical chapter 7 recovery by defendants Maefield and MDCE Investments; (iii) fails to allege insolvency; and (iv) does not allege that Maefield and MDCE Investments were creditors of MDC Energy. None of these arguments is correct.

### A. The complaint adequately identifies the transferees.

Defendants correctly point out that to allege a preferential transfer, a complaint must identify the nature and amount of the debt, and identify the transfer in question, including the date of the transfer, the names of the transferor and the transferee, and the amount of the transfer.[30] Defendants fault the trustee for failing to allege which transfers were ultimately paid over to which trade creditors and when.[31] But that argument misapprehends the nature of the trustee's preference claim. The premise of that claim is that Siffin and/or Acquisition may have been

---

[30] D.I. 27 at 22.

[31] *Id.* at 23.

creditors of MDC Energy, such that the payment of the $23.5 million may have satisfied a valid antecedent debt. The "nature" of that potential indebtedness is adequately alleged: it is "based on payments made to trade creditors or advances made by MDC Acquisition for the benefit of MDC Energy and based on Siffin's claim that he performed services for which he was entitled to receive compensation from MDC Energy."[32]

The initial transferees of each of the transfers are identified as Acquisition and Siffin.[33] In its reply, defendants argue that is insufficient because "Acquisition was a mere conduit and not an initial transferee."[34] But "mere conduit" is a defense that the defendants may raise – not something that a plaintiff is required to plead. Indeed, it is clear enough that the trustee disputes the contention that Acquisition was a mere conduit. In any event, there is certainly no reason why the complaint would need to set forth the factual basis for a potential defense. The complaint adequately identifies the transferees.

**B.    The complaint alleges that the initial transferee defendants received more than they would have in a chapter 7 liquidation; no such allegation is required for subsequent transferees.**

Defendants argue that the complaint lacks any factual allegation that defendants Maefield or MDCE Investments received more than they would have in a chapter 7 liquidation, as § 547(b)(5) requires. But the complaint specifically alleges that initial transferees Acquisition and Siffin received more than they would have in

---

[32] D.I. 24 ¶ 77.

[33] *Id.* ¶¶ 2, 78, 81.

[34] D.I. 33 at 6-7.

a chapter 7 liquidation (which, the complaint alleges, would have been nothing).[35]

Defendants Maefield and MDCE Investments are alleged to be subsequent transferees whose alleged liability arises under § 550 of the Bankruptcy Code.  The elements of a § 547 claim accordingly need not be pled with respect to them.

### C.    The complaint alleges insolvency at the time of the transfers.

Defendants contend that for those transfers alleged to have occurred more than the 90 days before the petition date (the period during which insolvency is presumed),[36] the complaint does not allege that MDC Energy was insolvent at the time of the transfers.[37]  But as described above in Part II.B of this Memorandum Opinion, paragraph 75 of the complaint specifically alleges insolvency at the time of each of the transfers.

### D.    Subsequent transferees may be liable regardless of whether they were themselves creditors.

Defendants argue that the complaint does not allege that defendants Maefield and MDCE Investments were creditors.  But as described in Part III.B, the theory on which the trustee seeks to hold those defendants liable is that they were subsequent transferees from whom the trustee may recover under § 550, not that they were initial transferees who may be liable under § 547.  It is therefore of no moment that they are not alleged to have been creditors of the debtors.

---

[35] D.I. 24 ¶ 65.

[36] *See* 11 U.S.C. § 547(f).

[37] D.I. 27 at 24.

**E.     Defendants' argument about the "insider" status of the trade creditors is beside the point.**

Continuing with the line of argument rejected in Part III.A. of this Memorandum Opinion (the notion that because the *defendants* believe that they were mere conduits and that the trade creditors were the ultimate recipients of the payments, *plaintiff* was required to conform its pleadings with defendants' theory), defendants argue that because the complaint fails to allege that the trade creditors whom the defendants later paid were insiders, the complaint is insufficient for those transfers alleged to have occurred more than 90 days before the petition date.[38] But as described in Part III.A., the premise of that argument is wrong. The plaintiff's position is that the defendants themselves – all of whom are alleged to be insiders – were the transferees, not mere conduits. Defendants' argument thus fails.

**IV.    The complaint adequately alleges claims under the Texas Uniform Fraudulent Conveyance Act (Count IV).**

In addition to seeking to avoid the alleged fraudulent conveyances under § 548 of the Bankruptcy Code, and alleged preferences under § 547, the trustee also asserts claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), which the trustee may assert by invoking the authority provided in § 544(b) of the Bankruptcy Code to stand in the shoes of any unsecured creditor as of the petition date. TUFTA creates claims for actual and constructive fraudulent conveyance that substantially mirror the claims provided under § 548. While it is true that there are a handful of

---

[38] Under § 547(b)(4), it is an element of a preference claim that the transfer took place within 90 days of the petition date. 11 U.S.C. 547(b)(4)(A). That "lookback" period is extended to one year in cases in which the alleged transferee is an insider. *Id.* § 547(b)(4)(B).

distinctions between the state and federal statutes, none of those distinctions is relevant to the complaint as it is pled. The allegations in the complaint state claims for actual and fraudulent conveyance under TUFTA for the same reasons as they state claims for actual and constructive fraudulent conveyance under federal law, as described in Parts I and II of this Memorandum Opinion.[39]

## V.   The complaint adequately alleges claims under § 550 (Count V).

Section 550(a)(1) of the Bankruptcy Code allows the trustee to recover, from an initial transferee (or person for whose benefit the transfer was made), the property transferred or the value of any transfer that is otherwise avoided.[40] In addition, to the extent that an avoided transfer is further conveyed to a subsequent transferee, § 550(a)(2) similarly permits recovery against "any intermediate or mediate transferee of such initial transferee."[41] The trustee accordingly asserts claims under § 550 to recover from both alleged initial and subsequent transferees.

Defendants move to dismiss this claim by continuing to sound the theme addressed in Parts III.A and III.E of this Memorandum Opinion – that the defendants were not transferees at all, but instead "mere conduits" of funds for which the actual "transferees" were the trade creditors. On this theory, the defendants are not liable

---

[39] TUFTA's definition of a transfer that is fraudulent as to present creditors also includes transfers "made to an insider for an antecedent debt." Tex. Bus. & Com. Code Ann. § 24.006(b). In this sense, Texas law creates a claim for fraudulent conveyance that is broader than the federal fraudulent conveyance law, including a claim that would be described as "preferential" under the vocabulary of federal bankruptcy law. For the reasons set forth in Part III of this Memorandum Opinion, the complaint also states a TUFTA claim on this basis.

[40] 11 U.S.C. § 550(a)(1).

[41] *Id*. § 550(a)(2).

because they never had "dominion and control" of the funds that were transferred.[42]

This argument fails for the same reasons, described in Parts III.A. and III.E, as do

the defendants' arguments  that the alleged transferees are not properly identified

and that the complaint must contain allegations that the trade creditors are insiders

if they received a payment more than 90 days before the petition date.  Again, while

the defendants are welcome to argue that, on the facts, they were mere conduits and

that the claims fail for this reason.  But for purposes of this motion, that is not what

the complaint alleges.  The claim under § 550 is validly stated.[43]

## VI.   The claim for veil piercing or alter ego will be dismissed without prejudice (Count VI).

Count VI of the complaint alleges that Acquisition's corporate veil should be

pierced such that the legal distinction between Acquisition and Siffin should be

disregarded, and any judgment against Acquisition should be enforceable against

Siffin and his assets.

Siffin moves to dismiss this count.  He argues that because Acquisition is

alleged to be incorporated in Indiana, that Indiana law should apply to the veil

piercing claim.[44]   The trustee apparently agrees, also engaging the issue as one

---

[42] D.I. 27 at 29-30.

[43] Defendants also argue that approximately $9.1 million that was allegedly paid to Acquisition by BML, Inc., which amount was allegedly due to MDC Energy (*see* D.I. 24 at 11 n.5), is not avoidable because it was not a transfer of the debtor's property.  D.I. 27 at 31.  But the debtor's decision to redirect an account receivable to which the debtor was legally entitled is every bit as much a transfer of the debtor's property as is a wire payment by the debtor. *See, e.g., In re Cybridge Corp.*, 304 B.R. 681, 689 (D.N.J. 2004).

[44] *See* D.I. 27 at 31-32.  *In re Washington Mut., Inc.*, 418 B.R. 107, 113-114 (Bankr. D. Del. 2009).

governed by Indiana law.[45]  Under Indiana law, to "establish that a corporation is merely an alter ego, two showings must be made: first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."[46]

With respect to this count, the complaint's allegations (stripping away, as the law requires, those allegations that simply state legal conclusions) are thin.  The complaint alleges that Siffin was the sole owner of Acquisition,[47] and that it did not have business operations.[48]

There is nothing unusual or improper, however, about the use of a separate legal entity (that does not otherwise hold business assets) as an "acquisition" entity for the purpose of conducting merger and acquisitions activity.  And beyond the conclusory assertions that Siffin used the entity "for fraudulent purposes" and that it would be "inequitable to permit Siffin to avoid liability," the complaint is fairly thin on specific factual assertions that allege the misuse of the corporate form.  Indeed, once the conclusory allegations are stripped away, the concrete factual allegations of the complaint are as consistent with the permissible use of an acquisition vehicle for

---

[45] D.I. 30 at 26.

[46] *Gilman v. Walters*, 61 F. Supp. 3d 794, 805 (S.D. Ind. 2014) (internal citations and quotations omitted).

[47] D.I. 24 ¶ 100.

[48] *Id.*

which legal separateness would be respected as they are with the misuse of the corporate form in a way that would give rise to veil piercing or alter ego liability.[49] The Court accordingly does not believe that the complaint states a plausible claim for veil piercing. Count VI will thus be dismissed without prejudice to the trustee's right to amend.

## VII.   Complaint states a claim for breach of fiduciary duty (Count VII).

Count VII of the complaint alleges that Siffin breached his fiduciary duties, as CEO and a director of MDC Energy, running to MDC Energy. Since MDC Energy is a Delaware entity, the internal affairs doctrine provides Delaware law will govern such a claim.[50] Under Delaware law, a fiduciary duty claim requires a showing that the defendant owed such a duty, and that defendant breached it, resulting in harm to the plaintiff.[51]

The trustee alleges that Siffin was the CEO of MDC Energy, which is sufficient to allege the existence of a fiduciary duty. The claim that he diverted $8.5 million, to which he allegedly had no legal entitlement, to himself is sufficient to establish that he breached his duties and harmed MDC Energy. The breach of fiduciary duty count is thus sufficient to state a claim.

Defendants argue that the complaint fails to allege that MDC Energy suffered any injury as a result of the alleged breaches. Their theory is apparently that because

---

[49] *See Twombly*, 550 U.S. 567  (allegations of parallel conduct are as consistent with an illegal conspiracy as they are with permissible business strategies, and thus does not assert a plausible Sherman Act claim).

[50] *See In re Art Institute*, No. 20-50627 (CTG) (Bankr. D. Del. Jan. 12, 2022), D.I. 87 at 11-15.

[51] *Id.* at 15.

the debtor's secured creditors were undersecured, it is only the lenders, rather than the debtor itself, that was injured by the alleged breaches.[52]  That argument fails, however, because it proves too much.  Perhaps it is true that in this case, the secured creditors held the fulcrum security, and would have ultimately received the economic benefit of an incremental dollar remaining with the debtor and coming into the bankruptcy estate rather than being transferred away before the filing.  But you could say the same about the common shareholders of a solvent corporation that was injured by a breach of fiduciary duty by its directors or officers.  No one would contend that such a corporation could not bring a fiduciary duty claim on the ground that it was the shareholders rather than the corporation itself that ultimately suffered the economic loss.  The fact that here, it may be the case that secured debt rather than common equity serves as the fulcrum security does not alter nature or enforceability of the fiduciary duties that run to the benefit of the entity itself.

Defendants are also incorrect to assert that the doctrine of *in pari delicto* bars the claim, since (as the trustee points out) the doctrine does not apply in an action by a corporation against its fiduciaries.[53]  Defendants' only response to that is to say that the principles of *Stewart* do not apply if the company itself has not suffered harm.  But again, the complaint here alleges that Siffin improperly diverted to himself $8.5 million belonging to MDC Energy to which he had no legal entitlement.  Defendants are certainly entitled to dispute those allegations at an appropriate stage in the

---

[52] D.I. 27 at 34.

[53] *See Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271 (Del. Ch. 2015).

litigation.  But accepting those allegations as true, as a court must on Rule 12(b)(6) motion, the complaint adequately alleges that Siffin harmed MDC Energy.

## VIII.  Unjust enrichment is properly pled in the alternative (Count VIII).

The trustee also alleges that the transfers at issue unjustly enriched Siffin and Acquisition at the expense of MDC Energy.  Unjust enrichment is an equitable doctrine that provides a remedy for "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[54]

Defendants move to dismiss the unjust enrichment claim on three grounds.  *First*, defendants argue that only the Lenders, not MDC Energy, suffered any losses, such that MDC Energy cannot be said to have been "impoverished" by the transfers.[55]  That argument fails for the same reason that the same contention does not defeat the fiduciary duty claim, as described in Part VII of this Memorandum Opinion.

*Second*, defendants argue that to the extent the complaint alleges that defendants used a portion of the funds that were transferred to them to pay MDC Energy's valid trade debt, they were not enriched by such payments.  While that point may be a fair one, it has no application to the $8.5 million that Siffin is alleged to have kept himself.  The argument is thus best understood as one that bears on the

---

[54] *Tolliver v. Christina School Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) (citation and internal quotation omitted).  *See also Digital Drilling Data Sys. L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 379-380 (5th Cir. 2020) (describing unjust enrichment under Texas law in similar terms).

[55] D.I. 27 at 36.

appropriate damages for the claim of unjust enrichment rather than a basis to dismiss the count.

*Finally*, defendants argue that an equitable remedy such as unjust enrichment should only be available when no adequate remedy is available at law. Here, defendants argue that the potential availability of a fraudulent conveyance claim (which is a legal remedy) to address any improper transfers ought to mean that there is no need for a court to resort to principles of equity. But as Judge Gross explained in *Green Field Energy Services, Inc.*,[56] a claim for unjust enrichment may properly be pled in the alternative and may be available if the trustee is unable to prove an element of a fraudulent conveyance claims (such as, for example, if the trustee cannot demonstrate the debtor's insolvency at the time of the transfer). The same point is applicable here. The complaint accordingly states a valid claim (in the alternative) for unjust enrichment.

## IX. Aiding and abetting breach of fiduciary duty/civil conspiracy is adequately pled (Count IX).

While the parties, in the briefing, dispute which law applies to the claim for aiding and abetting breach of fiduciary duty and for civil conspiracy, the caselaw in this jurisdiction has found the internal affairs doctrine to apply to claims of aiding and abetting in the same way it applies to fiduciary duty claims.[57] To make out such a claim, a plaintiff must show "(1) the existence of a fiduciary relationship; (2) proof that the fiduciary breached its duty; (3) proof that a defendant, who is not a fiduciary,

---

[56] No. 15-50262 (KGG), 2015 WL 5146161, at *10 (Bankr. D. Del. Aug. 31, 2015).

[57] *In re Fedders North America, Inc.*, 405 B.R. 527, 543-544 (Bankr. D. Del. 2009).

knowingly participated in a breach; and (4) a showing that damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary."[58]

The heart of the trustee's argument is that because only Siffin was a fiduciary, the various corporations he allegedly controlled may be liable for aiding and abetting his alleged breaches. And the case law in this jurisdiction notes that "there is an overlap between aiding and abetting a breach of fiduciary duty and civil conspiracy to breach fiduciary duties."[59] Indeed, some of the Delaware cases treat the two claims as essentially coextensive.[60]

The first two elements of the claim of aiding and abetting a breach of fiduciary duty (the existence of a fiduciary duty and a breach thereof) are satisfied for the same reason that the claim of breach against Siffin is sufficient. The complaint sufficiently alleges that each of the defendants other than Siffin participated in facilitating the transfers that are alleged to be a breach of Siffin's fiduciary duties, thus satisfying the third element. And the complaint adequately alleges that MDC Energy was injured by those breaches, thus satisfying the fourth element. The claim for aiding and abetting breach of fiduciary duty/civil conspiracy is thus adequately pled.

---

[58] *Id.* at 544.

[59] *In re USA Detergents*, 418 B.R. 533, 547 (Bankr. D. Del. 2009).

[60] *Id.*

## X. The complaint adequately alleges a claim for corporate waste (Count X).

The parties effectively agree that Delaware law applies to the claim for corporate waste, either because it is relied on by Indiana courts[61] or via the internal affairs doctrine.[62]  And Delaware courts have been clear that "a claim of waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets."[63]

But as to the $8.5 million that was allegedly transferred to Siffin, the complaint does in fact allege that those funds were "irrationally squandered" or "given away.". Specifically, the complaint alleges that Siffin had no legal entitlement to the funds, but that they were nevertheless paid to him, on account of false invoices that he presented.[64]  So accepting the allegations of the complaint as true, this is the "rare case" that properly states a claim for corporate waste under Delaware law.

## XI. The complaint properly alleges the disallowance of claims under § 502(d) (Count XI).

Section 502(d) of the Bankruptcy Code provides for the disallowance of any claim asserted by an entity that has received an avoidable transfer unless and until the transferee repays the avoided transfer.[65]  Defendants move to dismiss this claim only on the ground that they (unsuccessfully) argue that the avoidance claims should

---

[61] D.I. 27 at 40.

[62] D.I. 30 at 36.

[63] *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (internal quotation and citations omitted).

[64] D.I. 24 ¶¶ 35, 38.

[65] 11 U.S.C. § 502(d).

be dismissed.[66]   Because, however, the complaint (as described above) adequately alleges avoidance actions, it likewise adequately asserts claims for the disallowance of any claim that might be asserted by the alleged recipient of an avoidable transfer.

### Conclusion

For the foregoing reasons, the motion to dismiss will be denied, except for the claim for veil piercing/alter ego (Count VI), which will be dismissed without prejudice. Counsel for the trustee is directed to settle an appropriate order.

Dated: August 24, 2022                            _____
                                                                  CRAIG T. GOLDBLATT
                                                                  UNITED STATES BANKRUPTCY JUDGE

---

[66] D.I. 27 at 41.